**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**John Patrick ROSS, also known as Jon
P. Ross, Defendant–Appellant.**

**No. 90–3134.**

United States Court of Appeals,
Tenth Circuit.

Dec. 10, 1990.

Geary N. Gorup, Law Office of Leslie F. Hulnick, P.A., Wichita, Kan., for defendant-appellant.

Lee Thompson, U.S. Atty. (Lanny D. Welch and Robin Fowler, Asst. U.S. Attys., with him on the brief), Wichita, Kan., for plaintiff-appellee.

Before McKAY, MOORE, and ANDERSON, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

John Patrick Ross, a/k/a Jon P. Ross, was convicted of possessing cocaine with intent to distribute, 21 U.S.C. § 841(a)(1), and two counts of carrying a firearm in relation to a drug trafficking crime, 18 U.S.C. § 924(c). Ross appeals his convictions and sentence. We affirm in part and reverse in part.

## FACTUAL BACKGROUND

In April, 1989, a confidential informant told Sedgwick County Sheriff's Detective Robert Benton that an individual named "Jon" was distributing large amounts of cocaine in Wichita, Kansas. The informant told Benton that Jon sold cocaine from his home and at work. Jon worked at Honeywell Aerospace, and made sales in the parking lot there, from his 1986 silver Honda Accord. The informant had witnessed and participated in drug sales at Jon's home and in Honeywell's parking lot. Finally, the informant had seen Jon carry a briefcase containing several small boxes with varying amounts of prepackaged cocaine. Through further investigation, Benton discovered that a Jon P. Ross resided in Wichita, worked at Honeywell, and drove a 1986 silver Honda Accord.

In June, 1989, Benton was introduced, through another confidential informant, to Elizabeth Pierce and Paula Belew, and purchased cocaine from them. Pierce told Benton that her supplier's name was Jon.[1] On July 6, Benton contacted Pierce to purchase some cocaine. Pierce told Benton

she would go to her supplier for the cocaine. Benton and another detective set up surveillance of the Honeywell parking lot. They observed Pierce drive into the lot, and Ross exit the Honeywell building and go to his 1986 silver Honda Accord. Ross reached into the passenger side of his car, and then walked to Pierce's car and leaned inside. Pierce left the parking lot, and, approximately ten minutes later, met with Benton and sold him cocaine.

Benton attempted a similar purchase a week later. Pierce told Benton she had spoken with Jon and would go pick up some cocaine. En route, Pierce detected that she was being followed and pulled over and made a telephone call. She returned to the meeting place with Benton, told him she was being followed and had called Jon and could not pick up the cocaine.

On July 19, Benton again set up surveillance of the Honeywell parking lot. On four occasions that day Benton observed cars enter the parking lot and stop at Ross's Honda. Each time, Ross exited the building, went first to his car, and then briefly to the other person's car.

Two days later, on the basis of affidavits by Benton, a judge issued search warrants for Ross's car and his house. That afternoon, as officers went to Ross's house to execute the warrants, they encountered Ross in his car and a high-speed chase ensued. At one point, Ross jumped from his car and fled on foot. An officer apprehended Ross in a nearby field and placed him under arrest. Ross was carrying a brown paper sack. Ross and the sack were searched incident to the arrest and the officers found four checkbook boxes containing packets of cocaine, $1,769.00, two address books with names, dates, quantities and dollar figures, $132.00 worth of food stamps, and twelve personal checks. Inside the Honda, officers found another address book, and in the trunk

---

1. Benton believed that Jon also supplied Belew because the cocaine she sold him was similar to Pierce's in its packaging, quality, and texture.

they found a pocket scale and a loaded Smith & Wesson .38 caliber revolver.

In searching Ross's house officers found, among other items, drug paraphernalia, more cocaine, and two more guns—an Uzi .9 mm pistol and a loaded Ruger .9 mm semi-automatic pistol. The combined net weight of all the cocaine seized from Ross was approximately 328 grams.

## I.

■ Ross contends the district court improperly denied his motion to suppress the evidence obtained from his house and car. He specifically argues that the court should have held an evidentiary hearing to determine the factual truthfulness of the affidavits supporting the search warrants.[2]

"When reviewing a district court's denial of a motion to suppress, we accept the district court's factual findings unless they are clearly erroneous." *United States v. Arango*, 912 F.2d 441, 444 (10th Cir.1990) (citing *United States v. Berryhill*, 880 F.2d 275, 280 (10th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 853, 107 L.Ed.2d 846 (1990)). "The ultimate determination of reasonableness under the fourth amendment ... is a question of law which we review de novo." *United States v. Arango*, 912 F.2d at 444 (citing *United States v. McKinnell*, 888 F.2d 669, 672 (10th Cir. 1989)).

The legal standard for determining if a defendant is entitled to an evidentiary hearing to examine the factual truthfulness of an affidavit was set forth in *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

> There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of

reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.

*Id.* at 171–172, 98 S.Ct. at 2684.

Ross alleged in his Motion to Suppress that Benton's affidavits deliberately or recklessly contained false statements. *See* R.Vol. I at Tab 12. The motion specifically alleged that Benton's affidavit supporting the first search warrant[3] (for Ross's car) was false in three ways. First, it falsely stated that the first confidential informant told Benton "that a Jon was distributing large amounts of cocaine from his residence and from his 1986 Honda Accord, silver in color bearing Kansas registration tag CXZ 363 with VIN JHMBA5429GC003999." Ross argues that no informant would possess or recite this sort of detailed information, especially the vehicle identification number (VIN). Second, the affidavit similarly misquoted the informant by stating "[a]ffiant was told Ross carried a briefcase...." Ross argues that since the informant did not know "Jon" 's last name, the informant could not have said "Ross" carried a briefcase. Third, the issuing magistrate was further

---

2. The parties submit arguments regarding Ross's standing to assert Fourth Amendment rights. However, the trial court considered Ross's claim on the merits, *see* R.Vol. III at 25, and so do we.

3. Ross made no specific allegations of falsity in the affidavit supporting the second warrant (for Ross's house).

misled because he was not informed that the confidential informants had admitted guilt and were under threat of prosecution when they provided their information.

These allegations do not meet the preliminary showing of material falsity required by *Franks.* Ross submits no affidavits and no witnesses (besides asking to cross-examine Benton). The two false statements Ross identifies are more consistent with negligent inaccuracies than deliberate or reckless misrepresentations. *See United States v. Corral–Corral,* 899 F.2d 927, 933–34 (10th Cir.1990). Moreover, neither of them is material. Excising the informant's mention of the license plate and VIN of Ross's car, and the reference to any last name in the description of how "Jon" carried a briefcase, the affidavit still contains a wealth of information supporting probable cause. *See United States v. Barrera,* 843 F.2d 1576, 1580–81 (10th Cir.), *cert. denied,* 488 U.S. 859, 109 S.Ct. 153, 102 L.Ed.2d 124 (1988). The critical aspects of the first informant's[4] account were corroborated by Benton's personal surveillance: a man named "Jon" did work at Honeywell and did appear to be selling drugs from a silver 1986 Honda Accord. That man was Jon Ross, and the car's VIN was JHMBA5429GC003999.

Ross's third alleged falsehood is pure innuendo. The record contains no evidence revealing the identity of the confidential informants, and Ross does not attempt to prove his assertion. In his brief on appeal, Ross claims that the confidential informants were Elizabeth Pierce and Paula Belew. The government denies, and demonstrates the absurdity of, this claim: the second confidential informant introduced Benton to Pierce and Belew.

 Ross also argues that the informants' statements in both affidavits are conclusory, and should (along with any deliberately or recklessly false statements) be excised from the affidavits in determining whether they established probable cause. This argument misunderstands the relevant inquiry. First, a *Franks* challenge goes to false, not conclusory statements.[5] Second, the "deliberate falsity or reckless disregard whose impeachment is permitted ... is only that of the affiant, not of any nongovernmental informant." *United States v. Franks,* 438 U.S. at 171, 98 S.Ct. at 2684.

The district court correctly concluded that it did not need to conduct a *Franks* evidentiary hearing into the integrity of Benton's affidavits.

## II.

Ross next challenges the jury instructions. He specifically argues that the trial court erred in failing to submit three of his proposed instructions to the jury.

"Although a criminal defendant is entitled to an instruction regarding his theory of the case, a trial judge is given substantial latitude and discretion in tailoring and formulating the instructions so long as they are correct statements of law and fairly and adequately cover the issues presented." *United States v. Bryant,* 892 F.2d 1466, 1468 (10th Cir.1989) (quoting *United States v. Pack,* 773 F.2d 261, 267 (10th Cir.1985)), *cert. denied,* —— U.S. ——, 110 S.Ct. 3220, 110 L.Ed.2d 667 (1990).

---

4. The sole contribution of the second "informant" was to introduce Benton to Pierce and Belew.

5. Interpreted liberally, Ross's argument challenges the sufficiency, not the integrity, of the affidavits. We review magistrates' findings of probable cause, however, with "great deference." *United States v. Orr,* 864 F.2d 1505, 1508 (10th Cir.1988) (quoting *Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527, *reh'g denied,* 463 U.S. 1237, 104 S.Ct. 33, 77 L.Ed.2d 1453 (1983)). "A 'fair probability' or a 'substantial basis' for believing evidence of a

crime will be found at a certain location constitutes probable cause." *Id.* (quoting *Illinois v. Gates,* 462 U.S. at 236, 238, 103 S.Ct. at 2331, 2332). In this case, Benton's direct experience alone was sufficient to support probable cause to search Ross's car, and arguably his house. Moreover, the first confidential informant specifically reported buying drugs at Ross's house. This is neither conclusory, nor, given the substantial corroboration of the rest of the informant's story, insufficient to support probable cause to search the house.

A party has no vested interest in any particular form of instructions. The language of the instructions is for the court to determine. Challenges which merely pertain to the trial judge's language or formulation of the charge are reversible only for an abuse of discretion.

*Richards v. Attorneys' Title Guar. Fund, Inc.,* 866 F.2d 1570, 1573 (10th Cir.) (citations omitted), *cert. denied,* — U.S. —, 109 S.Ct. 3189, 105 L.Ed.2d 697 (1989).

■ Ross first alleges that, in regard to the two firearm counts, the trial court failed to instruct upon the requisite relation between the firearm and the underlying drug offense.[6] Ross argues:

Instruction No. 14 is nothing less than a slanted, biased and prosecution-oriented instruction. In Instruction No. 14 the jury is given many various manners by which guilt may be proven, but nothing that would distinguish the innocent, inadvertent or coincidental possession of a firearm while committing a totally unrelated crime involving drug trafficking. Pursuant to No. 14 the jury could convict if they found that the "firearm was carried in the vehicle within such proximity to make it immediately available for use" even if the Defendant had no intent to carry or use such weapon in relation to the drug trafficking offense.

Appellant's Brief at 31.

This allegation is meritless. In defining "use" and "carry,"[7] Instruction No. 14 required the jury to find that "the firearm was an integral part of [the] criminal undertaking which is charged in count one, and the availability of the firearm increased the likelihood that this criminal undertaking would succeed." R.Vol. II at Tab 29. This accurately states the law. *See United States v. McKinnell,* 888 F.2d 669, 675 (10th Cir.1989). We cannot say

the trial court's description of § 924(c)(1)'s nexus requirement was an abuse of discretion.

■ Ross next contends that the trial court failed to adequately caution the jurors to consider the evidence of the three counts independently. He argues this failure "allowed the jury to consider the fact that the Defendant had a gun in the trunk of his car at the time of his arrest in deciding whether the other weapons at the Defendant's home were carried 'in relation to' the drug trafficking offense." Appellant's Brief at 33.

This contention ignores Instruction No. 17, which states:

You are instructed to consider each and every count in the indictment as if it were a separate offense charged in a separate indictment. Before you can convict the defendant on any count of the indictment, you must find that the government has proved beyond a reasonable doubt each and every element of the offense charged in that count.

R.Vol. II at Tab 29. The instruction Ross desired was given to the jury. He has no legal right to his particular wording.

Finally, Ross challenges the trial court's failure to submit his proposed instruction regarding specific intent. He argues that the "instruction given by the Court fails to identify for the jury the specific intent involved, and allows the jury to speculate as to what specific intent is alleged in each of the three counts...." Appellant's Brief at 34.

Again, this argument mischaracterizes the instructions. In describing the elements of Count I, Instruction No. 10 states that the government must "prove, beyond a reasonable doubt, that defendant had in his possession what he knew was cocaine

---

**6.** 18 U.S.C. § 924(c)(1) provides:

"Whoever, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to

the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years...."

**7.** A separate instruction on the meaning of "in relation to" is not necessary to describe the essential elements of 18 U.S.C. § 924(c)(1). *See United States v. Henning,* 906 F.2d 1392, 1397–98 (10th Cir.1990).

and that he intended to deliver it to someone else." R.Vol. II at Tab 29. Instruction No. 10 also requires the jury to find, as an element of Count I, "[t]hat the acts of defendant were done knowingly and intentionally." *Id.* As for Counts II and III, Instruction No. 13 requires the jury to find that "defendant knowingly used or was carrying a firearm," *id.,* and Instruction No. 14 clarifies that "[a]n act is done knowingly if done purposely and voluntarily, as opposed to mistakenly or accidentally." *Id.* Moreover, Instructions 15 and 16 further define and explain specific intent at length.

Ross's challenges of the jury instructions are wholly without merit. The trial court was well within its discretion in submitting the jury instructions that it did.

### III.

Ross next asserts that the evidence was insufficient to support the conviction on the two firearm counts. Since we vacate Ross's conviction on Count III on other grounds, *see* section V below, we consider only the sufficiency of the evidence to support the conviction on Count II.

 "Evidence is sufficient if, viewed in the light most favorable to the government, a rational trier of fact could have found the elements of the crime beyond a reasonable doubt." *United States v. Tranakos,* 911 F.2d 1422, 1430 (10th Cir.1990) (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, *reh'g denied,* 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979)); *see also United States v. Hooks,* 780 F.2d 1526, 1531 (10th Cir.), *cert. denied,* 475 U.S. 1128, 106 S.Ct. 1657, 90 L.Ed.2d 199 (1986). The evidence "must be substantial; that is, it must do more than raise a mere suspicion of guilt." *United States v. Brandon,* 847 F.2d 625, 630 (10th Cir.) (quoting *United States v. Troutman,* 814 F.2d 1428, 1455 (10th Cir. 1987)), *cert. denied,* 488 U.S. 973, 109 S.Ct. 510, 102 L.Ed.2d 545 (1988). The evidence may, however, be wholly circumstantial. *United States v. Hooks,* 780 F.2d at 1529. And it may be consistent with a reasonable hypothesis of innocence. *Id.* at 1530. It is only necessary that a rational trier of fact

*could* have found the elements of the crime beyond a reasonable doubt.

 Ross argues that insufficient evidence supports his conviction on Count II because the Smith & Wesson .38 caliber revolver was locked in the trunk, and he did not use it during his encounter with the police. He further argues there was no evidence at trial that he brandished or displayed the revolver in connection with his distribution of drugs.

However, "the cases are unanimous in holding that a defendant can 'use' a firearm within the meaning of § 924(c)(1) without firing, brandishing, or displaying it." *United States v. McKinnell,* 888 F.2d at 674–77 (quoting *United States v. Meggett,* 875 F.2d 24, 29 (2d Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 166, 107 L.Ed.2d 123 (1989)). "[T]he 'uses' element of section 924(c)(1) is met when the defendant has 'ready access' to the firearm and the firearm 'was an integral part of his criminal undertaking and its availability increased the likelihood that the criminal undertaking would succeed." *United States v. McKinnell,* 888 F.2d at 675 (quoting *United States v. Matra,* 841 F.2d 837, 843 (8th Cir.1988)). Moreover, "when a motor vehicle is used, 'carrying a weapon' takes on a less restrictive meaning than carrying on the person. The means of carrying is the vehicle, itself, rather than the defendant's hands or pocket...." *United States v. Cardenas,* 864 F.2d 1528, 1535–36 (10th Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 3197, 105 L.Ed.2d 705 (1989).

Overwhelming evidence demonstrated Ross used his car as a base of operations for drug distribution. He kept drugs in his car and sold them from his car. Paula Belew testified that Ross sometimes got the drugs he sold her from the trunk. R.Vol. IV at 357–58. Moreover, the police found drug paraphernalia (pocket scales) in the trunk with the gun. And the gun was loaded.

Considering this evidence, and the applicable legal standards, the jury could have reasonably found that Ross carried the gun

with him in his car during and in relation to his drug distribution activities.

## IV.

Ross's final contention is that the district court inappropriately applied the Federal Sentencing Guidelines.

### A.

Ross first argues that he should have received a two point reduction in his base offense level for "acceptance of responsibility."[8] We review the acceptance of responsibility determination as a question of fact under the clearly erroneous standard. *United States v. Spedalieri*, 910 F.2d 707 (10th Cir.1990). "The sentencing judge is in a unique position to evaluate a defendant's acceptance or [sic] responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review and should not be disturbed unless it is without foundation." *United States v. Wach*, 907 F.2d 1038, 1040 (10th Cir.1990) (quoting U.S.S.G. § 3E1.1, comment. (n. 5)).

Ross argues that the sentencing scheme, as applied, requires him to plead guilty to all of the charges against him in order to obtain the benefit of a reduction, and this violates his Fifth Amendment right against self-incrimination and Sixth Amendment right to a jury trial. In support of his argument, Ross claims he clearly accepted responsibility for the drug trafficking charge[9] but was denied the reduction because he did not accept responsibility for the firearms charges as well. Thus, he argues, "[u]nder the district court's interpretation of the acceptance of responsi-

bility portions of the Sentencing Guidelines, the only manner by which a criminal defendant is entitled to any portion of the two-point deduction under this section is to plead guilty to all charges brought by the prosecutor."

We disagree. Even if Ross could substantiate his claim factually,[10] we have already rejected the constitutional argument. "[T]he denial of a downward adjustment under § 3E1.1 does not constitute a penalty or an enhancement of sentence. There is a difference between increasing the severity of a sentence for failure to demonstrate remorse and refusing to grant a reduction from the prescribed base offense level." *United States v. Rogers*, 899 F.2d 917, 924–25 (10th Cir.), *cert. denied*, — U.S. ——, 111 S.Ct. 113, 112 L.Ed.2d 83 (1990); *see also United States v. Trujillo*, 906 F.2d 1456, 1460–61 (10th Cir.1990).

Ross presents no evidence that the trial court's conclusion was clearly erroneous. On the contrary, the record contains ample evidence that Ross failed to "clearly demonstrate a recognition and affirmative acceptance of personal responsibility for his criminal conduct." We will not disturb the trial court's finding on appeal.

### B.

Ross also argues that the trial court erroneously relied on speculative evidence in determining, under U.S.S.G. § 2D1.1, the appropriate base offense level for the drug conviction (Count I). At trial, Ross was convicted of possessing, with intent to distribute, 379.03 grams of cocaine. For purposes of sentencing, the district

---

**8.** U.S.S.G. § 3E1.1 states:

*Acceptance of Responsibility*

(a) If the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct, reduce *the offense level by 2 levels.*

(b) A defendant may be given consideration under this section without regard to whether his conviction is based upon a guilty plea or a finding of guilt by the court or jury or the practical certainty of conviction at trial.

(c) A defendant who enters a guilty plea is not entitled to a sentencing reduction under this section as a matter of right.

**9.** Ross points to defense counsel's admission in opening argument that Ross was trafficking in cocaine and only wanted to be found not guilty of the two firearm counts. R.Vol. III at 52.

**10.** He does not. There is no indication in the record that the trial court determined Ross's acceptance was satisfactory for *any* of the three counts. And the trial court never indicated its finding was in any way related to Ross' pleas of not guilty.

court found that Ross had possessed 2,160 grams of cocaine. Under U.S.S.G. § 2D1.1's Drug Quantity Table, the two amounts represent the difference between base offense levels of 26 and 28.

In determining the base offense level for a drug offense under the Sentencing Guidelines, the sentencing judge is directed to aggregate the quantities of drugs "that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2); *see* § 3D1.2(d). The defendant need not have been convicted of trafficking the additional quantities. *United States v. Boyd,* 901 F.2d 842, 844 (10th Cir.1990); *United States v. Rutter,* 897 F.2d 1558, 1562 (10th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 88, 112 L.Ed.2d 60 (1990). The defendant need not even be indicted for trafficking the additional quantities. *United States v. Harris,* 903 F.2d 770, 778 (10th Cir.1990) (citing *United States v. Ware,* 897 F.2d 1538, 1542–43 (10th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 2629, 110 L.Ed.2d 649 (1990)).

The prosecution must prove, and connect to the convicted offense, the additional quantities by a preponderance of the evidence. *United States v. Boyd,* 901 F.2d at 845; *United States v. Kirk,* 894 F.2d 1162, 1164 (10th Cir.1990). We review the district court's factual findings under the clearly erroneous standard. *United States v. Harris,* 903 F.2d at 778.

Testimony at trial indicated that when Ross was arrested, agents found, among other things, two notebooks in the brown paper sack Ross was carrying. At trial, and again at the sentencing hearing, Detective Benton testified concerning the contents of the notebooks. The notebooks had entries in a ledger format; each entry began with a name, followed by dates and two sets of successive numbers. The first was a series of fractions such as "one-

eighth, one-eighth, one-sixteenth," R.Vol. III at 95, and the second set was a running total such as "minus 150, minus 40, minus 100." *Id.* at 94. Occasionally there was an additional entry such as the word "paid," *id.* at 97, or the amount "$2,705." *Id.* at 95. At the sentencing hearing, Benton testified he was convinced that the entries recorded cocaine sales; the fractions represented portions of grams of cocaine sold to the listed person on the listed date.

Ross points out that the notebooks never indicate that the listed fractions represent grams, let alone grams of cocaine. Ross charges that Benton's interpretation of the entries is too "speculative and conjectural" to meet the prosecution's burden of proof.

We disagree. Benton also testified at the sentencing hearing that, with the assistance of an address book found in Ross's car, Benton had contacted over a dozen of the entries in the notebook and corroborated his theory about the entries. According to Benton, nearly a dozen people had admitted that they had purchased from Ross the listed amount of cocaine on approximately the listed date.

Ross rejoins that, according to Benton's testimony, several people in the notebook denied having purchased cocaine, and that the entries that cannot be proved should not be included in the 2,160 grams total.[11] But Benton's testimony serves as corroboration not conclusive proof.[12] The government need only show, by a preponderance of the evidence, that Ross's notebooks are records of his cocaine sales. Given the extensive corroborative evidence that they are, we cannot say the district court's finding was clearly erroneous.

## V.

[15] In its brief, the government directs our attention to our recent decision in *United States v. Henning,* 906 F.2d 1392

---

11. Lisa Wiley, for example, is listed as purchasing a total 419.25 grams. R.Vol. V at 563. When contacted by Benton, she did not admit to purchasing cocaine from Ross. Excluding her amount, the resulting total would fall well below 2 kilograms and result in a base offense

level of 26, instead of 28. *See* U.S.S.G. § 2D1.1(c) (Drug Quantity Table).

12. It is more surprising that so many people admitted to purchasing the respective amounts of cocaine than that several denied making the purchases.

(10th Cir.1990). We stated in *Henning* that "where a defendant has been convicted of a single drug trafficking offense and more than one firearm was involved, a *single* violation of § 924(c)(1) occurs...." 906 F.2d at 1399 (emphasis added); *see also United States v. Chalan*, 812 F.2d 1302, 1317 (10th Cir.1987), *cert. denied*, 488 U.S. 983, 109 S.Ct. 534, 102 L.Ed.2d 565 (1988); *United States v. Henry*, 878 F.2d 937, 943 (6th Cir.1989). Ross was convicted of a single underlying drug offense, and two separate violations of § 924(c)(1). As both parties agree, this is improper.

We accordingly VACATE the conviction and sentence on count III, and REMAND for resentencing. For the reasons stated above, we AFFIRM all other aspects of Ross's convictions and sentence.