9 F.3d 118
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
CR-92-31-T Cheryl WILLIAMS, Defendant-Appellant.
 No. 92-6263.
 United States Court of Appeals,
Tenth Circuit.
 Oct. 29, 1993.
 
 Before ANDERSON, ENGEL[2] and KELLY, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 
 1
 Defendant-appellant Cheryl Williams appeals from her sentence for various drug-related offenses, 21 U.S.C. 841(a)(1), 843(b), 846, contending that the district court (1) miscalculated her base offense level, and (2) incorrectly applied a two-level enhancement for possession of a firearm in connection with the underlying offense. Our jurisdiction arises under 28 U.S.C. 1291 and 18 U.S.C. 3742 and we affirm.
 
 Background
 
 2
 Pursuant to an ongoing investigation, Officer Mark Danner of the Oklahoma City Police Department and Special Agent Karen Simpson of the Bureau of Alcohol, Tobacco and Firearms set up a drug transaction with Ms. Williams and codefendant Sylvester Hutchinson. Agent Simpson placed several phone calls to Mr. Hutchinson's home in order to set up the transaction. She spoke to Ms. Williams on two of these occasions. II R. 225-29. A meeting was arranged between Mr. Hutchinson, Ms. Williams, Agent Simpson and Officer Danner to discuss the transaction. At the meeting, Mr. Hutchinson related that he would travel to Houston once a week to pick up between 8 and 10 ounces of cocaine base. The reverse "sting" operation was set for later that evening in a nearby motel room.
 
 
 3
 Ms. Williams, Mr. Hutchinson and two codefendants arrived at the motel room and Mr. Hutchinson gave Officer Danner $4,000 for the purchase of the cocaine. Codefendant Bonnie Hooks then processed the cocaine into rock (crack) form and smoked some of it with Ms. Williams. All were arrested shortly thereafter including codefendant Terry Hooks who was waiting outside.
 
 
 4
 Ms. Williams was convicted for, inter alia, possession with intent to distribute cocaine, conspiracy to possess and distribute cocaine base, and possession of cocaine and cocaine base. The presentence report recommended a base offense level of 42, including a two-level upward adjustment for possession of a firearm in connection with the underlying offense. U.S.S.G. 2D1.1(b)(1)(1992). This offense level included a quantity of 240 ounces of cocaine base codefendant Hutchinson had possessed. After a sentencing hearing, the judge adopted the recommendations of the presentence report but made a two-level downward adjustment for acceptance of responsibility.
 
 Discussion
 
 5
 We review the district court's factual findings concerning drug quantity and possession of a firearm for clear error. United States v. Pinedo-Montoya, 966 F.2d 591, 595 (10th Cir.1992); United States v. Underwood,, 982 F.2d 426, 428 (10th Cir.1992). We review de novo its interpretation of the Sentencing Guidelines. Pinedo-Montoya, 966 F.2d at 595.
 
 
 6
 I. Quantity of Drugs Within Scope of Conspiracy
 
 
 7
 Ms. Williams' base offense level reflected 240 ounces of cocaine base to which Mr. Hutchinson had admitted possession. The amount was computed from his statements that he had traveled to Houston approximately once a week from May through December (approximately 30 times) to pick up between 8 and 10 ounces of cocaine base. The district court found Ms. Williams accountable for this conduct and sentenced her accordingly.
 
 
 8
 In sentencing a defendant for a drug-related offense, a judge must "approximate the quantity" of drugs relevant to the offense, U.S.S.G. 2D1.1 (n.12), including those amounts that were part of the "same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. 1B1.3(a)(2); United States v. Barela, 973 F.2d 852, 855-56 (10th Cir.1992), cert. denied, 113 S.Ct. 1021 (1993). The inclusion of such amounts must be supported by a preponderance of the evidence. United States v. Reyes, 979 F.2d 1406, 1410 (10th Cir.1992). The district court may rely on government estimates in approximating related quantities, United States v. Sturmoski, 971 F.2d 452, 462 (10th Cir.1992), so long as the estimate possesses "sufficient indicia of reliability to support its probable accuracy." U.S.S.G. 6A1.3(a).
 
 
 9
 Ms. Williams contends that she should not be held accountable for the 240 ounces of crack transported by Mr. Hutchinson from Houston and later distributed by him. She admits to involvement in only the planning and the consummation of the underlying transaction of January 23, 1992. The evidence, however, is to the contrary. Agent Simpson testified that when she asked Ms. Williams whether she had ever gone to Houston with Mr. Hutchinson, Ms. Williams replied that Mr. Hutchinson "never" went alone, clearly implying Ms. Williams awareness of Mr. Hutchinson's activities. III R. 237. Moreover, the record reveals Ms. Williams' active participation in drug transactions with Mr. Hutchinson dating from March 1991. III R. 167-76. Clearly, evidence of Ms. Williams' awareness of and active participation in the drug conspiracy adequately supports the district court's finding that the transportation and distribution of cocaine by Mr. Hutchinson prior to December 19, 1991, formed part of a continuous course of conduct for which Ms. Williams was accountable. See United States v. Ruth, 946 F.2d 110, 112-13 (10th Cir.1991); United States v. Sanders, 929 F.2d 1466, 1475 (10th Cir.), cert. denied, 112 S.Ct. 143 (1991).
 
 
 10
 We also find no error in the court's estimate of 240 ounces of crack being possessed and distributed by Mr. Hutchinson and Ms. Williams prior to the offense for which they were convicted. This estimate was based on figures which codefendant Hutchinson supplied himself. This certainly evidences the requisite "indicia of reliability to support its probable accuracy." U.S.S.G. 6A1.3(a); United States v. Cook, 949 F.2d 289, 296 (10th Cir.1991) (relying on amounts specified in testimony of codefendant); see United States v. Laster, 958 F.2d 315, 318 (10th Cir.1992) (relying on amounts specified in ledger kept by defendant); United States v. Ross, 920 F.2d 1530, 1538 (10th Cir.1990) (same); United States v. Harris, 903 F.2d 770, 778 (10th Cir.1990) (same).
 
 
 11
 II. Upward Adjustment for Possession of Firearm
 
 
 12
 Ms. Williams argues that she should not have received a two-level upward adjustment for possession of a firearm in connection with her offense of conviction because she was not present when the firearm was recovered from Mr. Hutchinson's residence. Actual possession of the firearm giving rise to the enhancement is not necessary. United States v. Underwood, 982 F.2d 426, 428 (10th Cir.1992). In Underwood, we held that "a 2D1.1(b)(1) enhancement could be based on a codefendant's possession of a firearm if Defendant knew of his codefendant's possession or such possession was reasonably foreseeable by Defendant...." Id. (citations omitted). Here, firearms were recovered from Mr. Hutchinson's locked bedroom to which only he and Ms. Williams possessed the keys. III R. 272. There was also testimony by Richard Bouchard and Terry Hooks that guns would frequently be lying around Mr. Hutchinson's bedroom. III R. 173-74, 284-90. At the sentencing hearing, Officer Danner testified that firearms were present in Hutchinson's bedroom on December 19 while Ms. Williams was present. IV R. 20, 94. This is certainly sufficient to prove that Ms. Williams knew that Mr. Hutchinson possessed such firearms in conjunction with the conspiracy for which she was convicted. Thus, the district court did not err in enhancing Ms. Williams sentence pursuant to U.S.S.G. 2D1.1(b)(1).
 
 
 13
 AFFIRMED.
 
 
 
 [2]
 The Honorable Albert J. Engel, Senior United States Circuit Judge for the United States Court of Appeals-Sixth Circuit, sitting by designation
 
 
 [1]
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir. R. 36.3