13 F.3d 408
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Beverly Diane WALL, Defendant-Appellant.
 No. 92-6252.
 United States Court of Appeals, Tenth Circuit.
 Nov. 30, 1993.
 
 Before BRORBY, SETH and HOLLOWAY, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 
 1
 Defendant Beverly D. Wall appeals her 51 months' sentence of imprisonment for possession of cocaine powder with intent to distribute in violation of 21 U.S.C. 841(a)(1). Wall contends that the district judge misapplied the Sentencing Guidelines by determining her base offense level not according to the quantity of cocaine powder which formed the basis for her conviction but, instead, according to the amount of cocaine base given to her by an accomplice. Finding no error in the judge's determination, we affirm.
 
 
 2
 * In April 1990, Wall allowed Angelo B. Mack, a drug distributor, and three of his associates to borrow her 1986 Dodge van for the purpose of driving from Oklahoma City to Los Angeles. II R. at 32-33; Presentence Report 1/2 1/221-23. Mack and his associates left Oklahoma City on April 9, 1990, drove to California, purchased five ounces of cocaine powder in Los Angeles, and returned to Oklahoma City on April 13. II R. at 35; Presentence Report 1/2 1/221-24. They returned the van to Wall who, together with another female accomplice, took temporary possession of the drugs. II R. at 35. Later, Mack rocked up the cocaine powder, converting it into cocaine base (crack), and packaged it into one-half ounce portions for distribution. Id.; Presentence Report 1/224. He gave Wall a half-ounce portion of the crack as payment for the use of her van. Id.
 
 
 3
 On April 30, 1990, Wall was arrested and charged with possession of five ounces of cocaine powder with intent to distribute in violation of 21 U.S.C. 841(a)(1). Id.; I R. Information. On June 25, 1992, Wall appeared before the district court and pled guilty to the government's charge. II R. at 27. At the same hearing, the district judge sentenced Wall. Id. at 45. The judge determined Wall's base offense level under U.S.S.G. 2D1.1 based on the one-half ounce of cocaine base she received from Mack, not the original five ounces of cocaine powder for which she was convicted. Id. at 39-40. After granting Wall's request for a two-level downward adjustment for acceptance of responsibility, the judge arrived at a total offense level of 24, and he sentenced Wall to 51 months' imprisonment, the low end of the applicable Guidelines range of 51-63 months, to be followed by a three-year term of supervised release. A $50 special assessment was also imposed. Id. at 37-38, 40-41, 45.
 
 
 4
 In determining Wall's sentence, the judge relied on U.S.S.G. 1B1.3 (Nov. 1, 1989) (applicable at the time of Wall's offense) which provides, in relevant part:
 
 
 5
 (a) ... Unless otherwise specified, (i) the offense level ... shall be determined on the basis of the following:
 
 
 6
 (1) all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation of that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense;
 
 
 7
 (2) solely with respect to offenses of a character for which 3D1.2(d) would require grouping of multiple counts, all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction; ....
 
 
 8
 (Emphasis added.)
 
 
 9
 Wall's counsel argued that the relevant conduct for sentencing was the possession of the five ounces of powder which was brought back from California by Mack for distribution with Ms.Wall; that the defendant was charged with possession with intent to distribute the five ounces so that this was the relevant conduct Wall should be sentenced on; and that the sentence should not be based on the consideration that part of the five ounces was later rocked up into cocaine. II R. at 38-39. The government argued that there was more of a nexus in that the half ounce of cocaine base was specifically given from Mack to Wall for the purpose of paying rental or paying for the use of her van, which was relevant. Id. at 39-40. Counsel for Wall conceded that there was no factual dispute as to whether the very cocaine that came back from California in the van was converted into cocaine base. Id. at 40.
 
 
 10
 After considering the arguments, the district judge stated that
 
 
 11
 applying Guideline 1B1.1 and 1B1.3, I'm overruling that objection; that the connection here is so close with the charged offense conduct that it is conduct that is relevant for sentencing purposes and for which Miss Wall is responsible.
 
 
 12
 On appeal, Wall reasserts her claim that the district judge erred in his application of the relevant Guidelines provisions and that her sentence should have been based on the five ounces of cocaine powder to which she pled guilty, instead of on 14 grams of cocaine base. She says the sentencing guideline computation was based on an event which was not charged as a criminal violation. Appellant's Brief at 3. Under Wall's proposed application of the Guidelines, her total offense level, after a two-point reduction for acceptance of responsibility, would be 16 with a guideline imprisonment range of 21-27 months (U.S.S.G. 2D1.1), substantially less than the total offense level of 24 and imprisonment range of 51-63 months produced by the district court's approach.
 
 
 13
 We review the district court's interpretation of the Guidelines de novo, United States v. Johnson, 971 F.2d 562, 575 (10th Cir.1992), while the court's supporting findings of fact are reviewed under the clearly erroneous standard. United States v. Ortiz, 993 F.2d 204, 207 (10th Cir.1993) ("[w]e review the district court's factual finding concerning the quantity of drugs for which a defendant may be held accountable under a clearly erroneous standard") (citing United States v. Bernaugh, 969 F.2d 858, 864 (10th Cir.1992)); United States v. Laster, 958 F.2d 315, 318 (10th Cir.) ("the district court's factual findings [regarding the relatedness and quantity of other drugs] are reviewed under a clearly erroneous standard"), cert. denied, 113 S.Ct. 147 (1992).
 
 II
 A.
 
 14
 Under U.S.S.G. 2D1.1, Wall's base offense level is determined on the basis of the quantity of drugs involved in her crime. The government has the burden of proving, by a preponderance of the evidence, the quantity and relatedness of the drugs on which Wall's sentence is based. United States v. Reyes, 979 F.2d 1406, 1410 (10th Cir.1992).
 
 
 15
 The Guidelines provide that "in a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." U.S.S.G. 1B1.3, Commentary, Background (Nov. 1, 1989). A defendant need not be either charged or convicted of any offense based on the additional quantities of drugs in order for those to serve as the basis for his or her sentence:
 
 
 16
 Application of [U.S.S.G. 1B1.3] does not require the defendant, in fact, to have been convicted of multiple counts. For example, where the defendant engaged in three drug sales of 10, 15, and 20 grams of cocaine, as part of the same course of conduct or common scheme or plan, subsection (a)(2) provides that the total quantity of cocaine involved (45 grams) is to be used to determine the offense level even if the defendant is convicted of a single count charging only one of the sales ....; thus ... multiple counts of conviction are not required for subsection (a)(2) to apply.
 
 
 17
 Id. Application Note 2. See also U.S.S.G. 2D1.1, Comment Note 12 ("[t]ypes and quantities of drugs not specified in the count of conviction may be considered in determining the offense level"); United States v. Underwood, 982 F.2d 426, 429 (10th Cir.1992), cert. denied, 113 S.Ct. 3043 (1993); Laster, 958 F.2d at 317-18; United States v. Ross, 920 F.2d 1530, 1538 (10th Cir.1990). Moreover, "[t]he fact that the conduct of an individual other than appellant was used in part to increase appellant's sentence is not inconsistent with the guidelines." United States v. Johnson, 971 F.2d 562, 575 (10th Cir.1992).
 
 B.
 
 18
 As noted, the district judge found that the objection to use of the one-half ounce of cocaine base was overruled and that quantity of cocaine base could be considered for sentencing; "that the connection here is so close with the charged offense conduct that it is conduct that is relevant for sentencing purposes and for which Miss Wall is responsible." II R. at 40. The judge's finding in this regard is supported by the evidence.
 
 
 19
 At sentencing, counsel for the government introduced evidence, including an investigative report, indicating that "Wall was aware of the intentions" and that she "had actually received cocaine base, or crack cocaine, as a payment for the use of the van for that trip." R. at 33. Counsel for the government made a statement at the sentencing hearing about the government's position. She explained that Ms. Wall's van was taken to Los Angeles, as some statements had shown. Government counsel then explained that
 
 
 20
 the van was taken out there loaded with the motorcycle, the motorcycle was used as a down payment or partial payment for the cocaine base--excuse me, the cocaine powder in the quantity of five ounces that was transported back in the van, Miss Wall's, van here to Oklahoma City. At that point Miss Wall and Miss Kennetta Mitchell, another co-defendant in this case, were in possession of that five ounces, they did take the five ounces. And at a later time Angelo Mack did rock up the cocaine into a quantity of base for distribution, of which Miss Wall did receive the half-ounce quantity in payment or for rental use of her van according to the investigative report received by Mr. Tillman. That would be the testimony of Detective Terhune too, based upon his knowledge of the investigation.
 
 
 21
 Id. at 35-36. Thereupon, counsel for Ms. Wall stated: "Your Honor, we will stipulate to that statement also." Id. The judge asked Ms. Wall about her statement to the probation officer that she was unaware of the purpose of Mr.Mack's trip to California. He asked her whether she knew that statement was false and Ms. Wall answered: "Yes. Yes, I did. I knew it was false." Id. at 37.
 
 
 22
 Nevertheless, Wall's counsel stresses the fact that there was nothing in the plea agreement, the charge, the plea or the government's proffer indicating that Ms. Wall bargained for the 14 grams of cocaine base before loaning her van to Mack. Wall also argues that there was "absolutely no evidence Ms. Wall possessed the fourteen grams with intent to distribute as part of some larger scheme with Angelo Mack." Appellant's Brief at 6.
 
 
 23
 On this record we are obliged to conclude that the government's evidence has "sufficient indicia of reliability to support its probable accuracy." U.S.S.G. 6A1.3. The evidence demonstrates a sufficient nexus between Wall's receipt of the one-half ounce of crack cocaine and her admitted possession of cocaine powder with intent to distribute in violation of 21 U.S.C. 841(a)(1).
 
 
 24
 AFFIRMED.
 
 
 
 [1]
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir. R. 36.3