**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 26, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

GARRYN JACKSON,

    Defendant - Appellant.

No. 19-1191
(D.C. No. 1:18-CR-00189-REB-1)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **KELLY**, and **CARSON**, Circuit Judges.
_____

Defendant-Appellant Garryn Jackson appeals from the district court's denial of his motion to suppress evidence. United States v. Jackson, No. 18-cr-00189-REB (D. Colo. Dec. 7, 2018). Mr. Jackson entered a conditional plea of guilty to (1) possession with intent to distribute methamphetamine, 18 U.S.C. § 841(a)(1) (Count Two), and (2) possession of a firearm during, and in relation to, and in furtherance of a drug trafficking crime, 18 U.S.C. § 924(a)(1)(A)(i) (Count Three). He was sentenced to 72 months' imprisonment and three years' supervised release. On appeal, he argues that the officers

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

lacked probable cause to arrest him and that he did not abandon a firearm seized by police. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

**Background**

Denver police officers arrested Mr. Jackson on March 16, 2018 as part of a larger operation targeting suspected narcotics dealers in downtown Denver. As part of the operation, the officers from the Denver Police Department (DPD) had confidential informants (CIs) purchase narcotics from suspected drug dealers using previously recorded money.

On this occasion, DPD Detective Timothy Goss was circling the 2200 block of Lawrence, a high-crime area, when he noticed Mr. Jackson. Mr. Jackson stood out among various transients in the area because he was cleanly dressed, appeared "healthy," and had on bright, white sneakers. Detective Goss eventually stationed himself at a nearby observation point.

The CI approached the area and began talking with a man in a Carhartt-like brown jacket who was later identified as Kevin Tindall. After a few moments, Mr. Tindall and the CI approached Mr. Jackson and the three of them huddled together. The CI then left Mr. Tindall and Mr. Jackson. Detective Goss observed Mr. Tindall and Mr. Jackson exchange something hand-to-hand.

Detective Goss, who had been communicating his observations to other officers via radio, received confirmation from another officer that the CI had successfully purchased what appeared to be crack cocaine from Mr. Tindall. Detective Goss then

2

described Mr. Jackson and Mr. Tindall over the radio and arrest teams were ordered to move in on the two men and make contact.

An officer approached Mr. Jackson, grabbed his arm, and told him he was "not going anywhere." Moments thereafter, Mr. Jackson fled on foot. The officer chased him and took him to the ground, at which point the officer heard a metallic sound. Someone yelled "gun," and Mr. Jackson stood up and continued his flight. Another officer, who also heard "a kind of clunk sound," saw Mr. Jackson run off. Officers at the scene recovered a firearm that a separate officer confirmed she had not seen in the street prior to the scuffle with Mr. Jackson.

Mr. Jackson was located, arrested, and searched. On his person, officers recovered crack cocaine, cocaine base, methamphetamine and $521, which included two of the pre-recorded bills the CI had used to pay for narcotics earlier.

Mr. Jackson later moved the district court to suppress the physical evidence. He claimed the officers did not have probable cause to seize or search him and that all evidence recovered, including the drugs and the firearm, was thus fruit of the poisonous tree. The district court denied the motion after a hearing, finding that the officers had probable cause to arrest Mr. Jackson, the search of his person was a valid search incident to arrest, and he had abandoned the gun.

**Discussion**

"In an appeal of the denial of a defendant's motion to suppress evidence, our standard of review is to accept the trial court's findings of fact, unless clearly erroneous, and to consider the evidence in the light most favorable to the Government." United

3

States v. McAlpine, 919 F.2d 1461, 1463 (10th Cir. 1990). However, "[t]he ultimate determination of reasonableness under the [F]ourth [A]mendment . . . is a question of law which we review de novo." United States v. Ross, 920 F.2d 1530, 1533 (10th Cir. 1990) (quoting United States v. Arango, 912 F.2d 441, 444 (10th Cir. 1990)).

**A. Probable Cause**

A warrantless arrest is reasonable under the Fourth Amendment where the officer "[has] probable cause to believe that a criminal offense has been or is being committed." Devenpeck v. Alford, 543 U.S. 146, 152 (2004). An officer must have reasonable grounds to believe a person is involved in criminal activity and probable cause is based on the totality of the circumstances. Maryland v. Pringle, 540 U.S. 366, 371 (2003). Probable cause must be based on more than mere suspicion. Florida v. Royer, 460 U.S. 491, 499 (1983) (plurality opinion).

Mr. Jackson argues that the "limited findings of fact" made by the district court fail to support probable cause sufficient to warrant his arrest. Aplt. Br. at 12. He specifically argues that probable cause is lacking because Mr. Jackson was merely standing in the area when a drug transaction occurred and Detective Goss did not observe an exchange, let alone what was exchanged. He suggests that Detective Goss's conclusion about criminal activity was driven by his prior experience, not the facts of this case and that "reliance on 'training and experience' is merely dressed-up language for guesswork and 'hunches.'" Aplt. Reply Br. at 2.

The district court made extensive findings of fact at the outset and detailed the facts within the officer's knowledge and observation supporting probable cause:

4

(1) illegal drug transactions, especially involving crack cocaine, were known to occur in the area near the Denver Rescue Mission;

(2) drug dealers often employed a homeless or transient person to act as a middleman during a drug transaction;

(3) a CI had been engaged and sent into the area with the intention to purchase drugs;

(4) the CI had made contact with Mr. Tindall;

(5) the CI and Mr. Tindall broke off from the group of people amongst whom they previously had been standing and interacted with Mr. Jackson more privately;

(6) after the CI left the area, Mr. Jackson and Mr. Tindall came back together and appeared to make an exchange; and

(7) after this interaction, the CI left the scene and gave a signal that he had just successfully purchased drugs.

Order Denying Motion to Suppress at 7, Jackson, No. 18-cr-00189-REB (Dec. 7, 2018) (ECF No. 54). The district court concluded that the reasonable inferences from these facts supported probable cause to believe Mr. Jackson had participated in the sale of crack cocaine to the CI with Mr. Tindall as a go-between. We agree. Nothing suggests the district court's factual findings are clearly erroneous, and they support its probable cause determination.

Given that Detective Goss had probable cause, which was properly communicated to the arresting officers under the collective knowledge doctrine, see United States v. Chavez, 534 F.3d 1338, 1345 (10th Cir. 2008), we uphold the district court's conclusion that the search and seizure of Mr. Jackson was reasonable under the Fourth Amendment. "A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest

requires no additional justification." United States v. Robinson, 414 U.S. 218, 235 (1973). Here, the search of Mr. Jackson's person was justified by probable cause. Thus, the recovery of crack cocaine, cocaine base, methamphetamine, and two of the previously recorded bills are not "fruit of the poisonous tree," as Mr. Jackson argues, and the district court properly denied his motion to suppress.

## B. Firearm Abandonment

The parties conceded at oral argument that, if the search and seizure of Mr. Jackson were justified by probable cause, we need not address the gun abandonment issue. However, we agree with the district court and hold that Mr. Jackson abandoned the firearm. See United States v. Easley, 911 F.3d 1074, 1083 (10th Cir. 2018) ("Abandonment occurs if either (1) the owner subjectively intended to relinquish ownership of the property or (2) the owner lacks an objectively reasonable expectation of privacy in the property."). The record makes clear that the officer who chased Mr. Jackson heard a metallic sound, someone yelled "gun," and another officer confirmed that the firearm was visible in the street only after the officer's scuffle with Mr. Jackson. Given these facts, the firearm was in plain view of the officers, meaning Mr. Jackson no longer maintained an objectively reasonable expectation of privacy in the firearm. Moreover, as Mr. Jackson's actions caused the firearm to fall into the street — a fact which he likely knew based on both the metallic sound and someone yelling "gun" — his decision to continue fleeing from the police amounts to voluntary abandonment. See United States v. Flynn, 309 F.3d 736, 738 (10th Cir. 2002) (stating that "abandonment

6

must be voluntary").  Accordingly, we affirm the district court's holding that Mr. Jackson abandoned the firearm.

     **AFFIRMED.**

                     Entered for the Court


                     Paul J. Kelly, Jr.
                     Circuit Judge