**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Javier REYES, Defendant–Appellant.**

**No. 91–6398.**

United States Court of Appeals,
Tenth Circuit.

Nov. 17, 1992.

Anita F. Sanders, Oklahoma City, Okl., and Gail A. Jensen, Wichita, Kan., for defendant-appellant.

Timothy D. Leonard, U.S. Atty., and Leslie M. Kaestner, Asst. U.S. Atty., Oklahoma City, Okl., for plaintiff-appellee.

Before BALDOCK and EBEL, Circuit Judges, and LUNGSTRUM, District Judge.*

BALDOCK, Circuit Judge.

Defendant Javier Reyes appeals his guidelines sentence following his guilty plea to using a telephone to facilitate a

---

* The Honorable John W. Lungstrum, United States District Judge for the District of Kansas, sitting by designation.

cocaine distribution conspiracy. 21 U.S.C. § 843(b). Defendant contends that the district court erred in determining the weight of the cocaine for sentencing. Our jurisdiction arises under 18 U.S.C. § 3742, and we reverse.

Based on a tip from a confidential informant, federal law enforcement officers arrested Jaime Hernandez and Bernardo Trevino and seized ten ounces of cocaine. Hernandez agreed to cooperate with law enforcement and named Defendant as the source of the cocaine. Hernandez, accompanied by Special Agent Andrew Irwin of the Immigration and Naturalization Service, who was acting in an undercover capacity and equipped with a body transmitter, went to Defendant's house. In front of Defendant's house, Hernandez, Irwin and Defendant had a conversation in which Irwin offered to pay for the cocaine that Defendant had supplied to Hernandez and indicated that he wanted to purchase an additional pound of cocaine. Defendant agreed to meet Irwin and Hernandez later at Hernandez' house. Defendant was arrested prior to the meeting, and a search of his house and vehicles uncovered no cocaine.

■ Following the return of a three-count indictment, Defendant pleaded guilty, pursuant to a plea agreement, to count 3, which charged that he "did knowingly cause Jaime Hernandez–Lopez to use a communication facility, that is, a telephone, in facilitating the knowing and intentional conspiracy to distribute cocaine ... in that Jaime Hernandez used said telephone to discuss the acquisition and distribution of cocaine" in violation of 21 U.S.C. § 843(b).[1] Appellant's App. at 5 (indictment). The presentence report ("PSR") concluded that the offense involved 737 grams of cocaine and calculated Defendant's base offense level ("BOL") at 26. *See* U.S.S.G. § 2D1.1(c)(9). The quantity was based on the ten ounces of cocaine seized from Hernandez and Trevino[2] and an additional pound of cocaine that the presentence report concluded Defendant agreed to supply to Irwin. According to the PSR, "[a]rrangements were made to procure one pound of cocaine, [and] [D]efendant agreed to supply the pound of cocaine, but wished to discuss the details at a different location." II R. at 2. Defendant filed written objections to the PSR contending that the pound of cocaine that was the subject of discussion between Irwin and himself should not be included in determining the BOL. In response to Defendant's objections, the probation department, which had prepared the PSR, claimed that "[t]he weight under negotiation in a conspiracy count shall count if the defendant is reasonably capable of producing the negotiated amount."[3] *Id.* at 8 (addendum to PSR).

---

1. Section 843(b) makes it "unlawful for any person knowingly or intentionally to use any communication facility in committing or in causing or facilitating the commission of any act or acts constituting a felony [drug offense]." 21 U.S.C. § 843(b). In charging that Defendant caused Hernandez to use a telephone, count 3 charged the offense under an aiding and abetting theory. *See* 18 U.S.C. § 2(b). Although count 3 did not cite 18 U.S.C. § 2(b), Defendant did not object to the sufficiency of the charge, and the charging language clearly gave Defendant adequate notice. *See* Fed.R.Crim.P. 7(c)(3) (omission of citation to statute is not grounds for dismissal of indictment unless it misleads and prejudices defendant). *See also United States v. Malicoate*, 531 F.2d 439, 440 (10th Cir.1975). Nevertheless, the offense level under the guidelines is the same regardless of the theory of liability. *See* U.S.S.G. § 2X2.1.

2. Defendant claimed that he supplied only five ounces of cocaine to Hernandez. However, Defendant did not argue below, nor does he argue here, that including the entire ten ounces of cocaine seized from Hernandez and Trevino in calculating his BOL was error.

3. Although the probation department did not cite the commentary to U.S.S.G. § 2D1.4 for this proposition, we deduce from counsel's argument at sentencing, the district court's reasoning, and the arguments presented in the briefs on appeal that this was the authority for the probation department's assertion. The commentary to U.S.S.G. § 2D1.4, the drug conspiracy guideline, provides that

[i]f the defendant is convicted of an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount. However, where the court finds that the defendant did not intend to produce and was not reasonably capable of producing the negotiated amount, the court shall exclude from the guideline calculation the amount that it finds the defen-

Defense counsel conceded at the sentencing hearing that if in fact Defendant and Irwin negotiated the sale of a pound of cocaine, it could be included in the BOL calculation. Sentencing Hr'g Tr. at 2. Rather, Defendant's sole objection below, and only issue on appeal, is the factual issue of whether Defendant and Irwin negotiated for the sale of a pound of cocaine.[4] *Id.* at 3.

At the evidentiary hearing before the district court, Irwin initially testified as to the substance of the conversation with Defendant as follows:

> I told [Defendant] I had the money for the ten ounces. Talked to him just a little bit about the quality. I told him it was pretty good cocaine. And that I had brought enough money, extra money besides the money owed for the ten ounces of cocaine to buy approximately—I told him I wanted a pound of cocaine. And he said okay. And I said, well, I have the money hidden. Do you want me to take it out right here. And he said, no, I have got to go. And, you know, this was when we're speaking about the pound.

And I said, okay. He said, go to Mr. Hernandez' house. I'll meet you over there.

Sentencing Hr'g Tr. at 7.

On cross-examination, defense counsel asked Irwin "precisely what it [was] that [Defendant] said that led you to believe he agreed to furnish you with an additional one pound?" Irwin responded:

> [W]hen I told him I had brought additional money to buy a pound, he inquired of Mr. Hernandez if I was okay. And Mr. Hernandez said that I was. And he said, okay, let's go over to Mr. Hernandez' house. His non-verbal communication ... was positive and direct, without hesitation. And I believe from what he told me and the way he told me, that he would have no problem at all getting the pound of cocaine. That it would be just a simple matter of minutes. That we'd meet at Mr. Hernandez' house and the deal would be taken care of.

> Defense Counsel: I understand what your belief is, sir. I want to know—use the words.

___

dant did not intend to produce and was not reasonably capable of producing. U.S.S.G. § 2D1.4, comment. (n. 1).

**4.** Despite Defendant's lack of objection below and failure to raise the issue on appeal, we have some concern whether the commentary to U.S.S.G. § 2D1.4, allowing for the weight under negotiation to be included in the BOL calculation, is applicable to this case. This commentary applies only if the conspiracy for which the defendant is convicted involves a negotiation. U.S.S.G. § 2D1.4, comment. (n. 1). In limiting its application to conspiracies involving negotiations for which the defendant is convicted, its purpose is to guide courts in calculating the BOL when the defendant is arrested prior to consummation of the unlawful objective of the drug conspiracy. As alleged both in the indictment, *see* Appellant's App. at 5, and as stipulated to in the plea agreement, *see id.* at 8, the distribution of ten ounces of cocaine was the objective of the conspiracy underlying the telephone facilitation offense for which Defendant was convicted. Indeed, based on this record, the *distribution of a pound of cocaine to Irwin* could not as a matter of law be considered an objective of this conspiracy because at the time of the purported negotiation, Hernandez and Trevino, the only named coconspirators, were either working as a government agent or in custody. *See United States v. Barboa,* 777 F.2d 1420, 1422 (10th Cir.1985) ("[T]here can be no indictable conspiracy involving only the defendant and government agents or informers."). Absent evidence of a culpable coconspirator, the distribution of a pound of cocaine to Irwin cannot be considered an unlawful objective of the conspiracy and therefore cannot be included in the BOL calculation under § 2D1.4. *See* U.S.S.G. § 2D1.4 (base offense level for drug conspiracy same as if object of conspiracy had been completed). Similarly, due to the absence of any evidence that Defendant ever possessed or distributed a pound of cocaine, this quantity cannot be included in the BOL calculation under the relevant conduct guideline, U.S.S.G. § 1B1.3, which applies only if the drugs relate *to conduct for which the defendant can be held* accountable. *Id.,* comment. (n. 2). We doubt that Congress or the Sentencing Commission intended the commentary to § 2D1.4 to serve as a back door for the government to enter quantities of narcotics into the BOL calculation for which a defendant cannot otherwise be held accountable under § 2D1.4 or § 1B1.3. Nonetheless, in light of our holding, we need not decide whether the district court's reliance on the commentary to U.S.S.G. § 2D1.4 rises to the level of plain error.

Irwin: He said, "Okay."

*Id.* at 28–29.

At Irwin's request, defense counsel played the tape of the conversation, and Irwin translated the conversation from Spanish to English as follows:[5]

Irwin: What's going on man? Gordo. What's going on?

Defendant: Just here.

Irwin: Hey, the stuff that he delivered to me was good.

Defendant: Yes.

Irwin: I have all the money here, and I brought more. I want to see if we could do another deal. Do you understand me?

Defendant: What kind of deal?

Irwin: Do you have any right now?

Defendant: No, you know, I don't have it right now on me.

Hernandez: How much did you want?

Irwin: Well, one pound if he has it. I have all the money hidden in the car over there. Is it okay right here to take the money out?

Defendant: No, I don't here, son, no. Right now, can you go over to Jaime's [Hernandez] house?

Hernandez: Yes.

Defendant: Right now, I'm going to go over there and meet with you.

Irwin: Okay.

Defendant: Is that okay?

Irwin: Yeah, it's okay.

Defendant: I'll go over there to where you are at. I will get with you right now.

Hernandez: He says, that if you want, we'll go to the house in awhile.

Irwin: Whose house?

Hernandez: To mine.

Irwin: Why? Don't you want the money that I've got right now?

Defendant: I'm going after [unknown name].

Irwin: So what do you think about making a deal in the future; do you understand? Because, well, do you think I'm going to have to spend the night here?

Defendant: Well, I'll come and talk to you over at the other house. I'll be over there in a little while.

Irwin: To his house? [pointing to Hernandez].

Defendant: Yes. Jaime.

*Id.* at 31–33. Immediately after the conversation, Irwin recorded his impression of what happened: "[H]e says he can get some more and he wants to go over to Jaime's house. He didn't want the money right now, but he acknowledged the deal." Appellant's App. at 26. *See also* Sentencing Hr'g Tr. at 36–37, 43. Although Defendant admitted his understanding that Irwin and Hernandez wanted an additional pound of cocaine, he testified that he never said that he was going to sell Irwin and Hernandez a pound of cocaine and never intended to negotiate with Irwin regarding a pound of cocaine. Sentencing Hr'g Tr. at 46–52.

In finding that the additional pound could be included in calculating Defendant's BOL, the district court found Irwin's testimony to be "extremely credible." *Id.* at 56. The district court reasoned:

I think so often in situations like this, body language and nuances of expression are important, more perhaps than words. It's obvious that Agent Irwin left that transaction believing that a deal was struck. And I believe that his understanding was based on both the words and the expressions and so-called body language of the Defendant. And I'm satisfied that Mr. Reyes agreed to another pound transaction and that he was capable of following through on the pound transaction.

*Id.* The district court sentenced Defendant in accordance with the presentence report's calculation of the guidelines sentence

---

5. The government did not prepare a transcript or translation of the recorded conversation. Defendant's prepared transcript of the translated conversation, *see* Appellant's App. at 25–26, was substantially the same as Irwin's translation at the sentencing hearing other than a few passages which Defendant translated as "a little while" and Irwin understood to mean "now," a reference to Defendant's daughter which Irwin understood to be a reference to a name he could not discern, and a reference to "that guy" which Irwin could neither discern nor remember. Sentencing Hr'g Tr. at 36.

which required imposition of forty eight months—the maximum term under the statute.[6]

The question of whether Defendant and Hernandez negotiated the sale of a pound of cocaine is a factual issue which we review under a clearly erroneous standard. *United States v. St. Julian,* 922 F.2d 563, 571 (10th Cir.1990). We will not disturb a district court's factual finding "unless it has no support in the record or, after reviewing all the evidence, we are firmly convinced that an error has been made." *United States v. Bernaugh,* 969 F.2d 858, 864 (10th Cir.1992) (citation omitted). At sentencing, the government carries the burden of proving the quantity of drugs used to calculate the BOL by a preponderance of the evidence. *Id.*

■ The record before us does not support the district court's finding that Defendant negotiated and/or agreed with Hernandez for the sale of an additional pound of cocaine. While Agent Irwin initially testified that, when he asked about purchasing an additional pound of cocaine, Defendant responded "okay," Irwin's own translation of the recorded conversation does not support this characterization. Nothing in the recorded conversation indicates an affirmative response by Defendant to supply an additional pound of cocaine. Indeed, when Irwin raised the subject, Hernandez (who by that time was a government informant), not Defendant, questioned him about the quantity. Defendant never negotiated the details of an additional sale, and nothing in the record, other than Agent Irwin's subjective belief, indicates that Defendant agreed to it. While Defendant did not rule out the possibility, the lack of specific details concerning an additional transaction indicates that, at best, Defendant intended to negotiate later. *See United States v. Ruiz,* 932 F.2d 1174, 1184 (7th Cir.) (defendant's mention of greater quantity with no discussion of price insufficient

to establish negotiation for greater quantity), *cert. denied,* —— U.S. ——, 112 S.Ct. 151, 116 L.Ed.2d 116 (1991).

The only agreement between Defendant and Irwin was to meet latter at Hernandez' house. While Irwin may have believed that he would receive an additional pound of cocaine at this meeting, Defendant never responded to his request and only agreed to meet later, at least in part, to receive his money for the prior transaction. For a court to infer an agreement for the sale of an additional pound of cocaine based on these facts would be speculation and insufficient for the government to meet its burden. *See United States v. Kirk,* 894 F.2d 1162, 1164 (10th Cir.1990) ("Evidence which does not preponderate or is in equipoise simply fails to meet the required burden of proof.").

Finally, the district court's reliance on Defendant's body language and expressions has limited support in the record. Irwin's testimony that Defendant's "nonverbal communication was positive and direct," lacks evidentiary detail sufficient to infer an agreement by Defendant to distribute an additional pound of cocaine. *See* U.S.S.G. § 6A1.3(a) (information used to resolve disputed factors at sentencing must have "sufficient indicia of reliability").

We do not doubt Agent Irwin's veracity or his honest belief that he had reached an agreement with Defendant for the sale of an additional pound of cocaine. However, Agent Irwin's subjective belief is not the relevant issue; rather, the evidence must establish a negotiation, which at a minimum requires proof that Defendant intended to participate in an additional illegal drug transaction. While we recognize that intent may be inferred from the circumstances, such an inference cannot be properly drawn from the evidence in this record. Therefore, despite the district court's finding that Irwin's testimony was "ex-

---

**6.** Without the additional pound of cocaine, Defendant's base offense level would be lowered from 26 to 20 based on the ten ounces of cocaine seized from Hernandez. U.S.S.G. § 2D1.1(c)(12). Defendant also received a two-point reduction for acceptance of responsibility.

*Id.* § 3E1.1. Given Defendant's criminal history category of I, his guideline range would be reduced from 51–63 months to 27–33 months without the inclusion of the additional pound of cocaine. *See id.* (sentencing table).

tremely credible," the evidence is insufficient to infer that Defendant was negotiating or had agreed with Agent Irwin to distribute an additional pound of cocaine.

In *United States v. Foley*, 906 F.2d 1261 (8th Cir.1990), the Eighth Circuit rejected similarly speculative evidence in determining the quantity of controlled substance purported to be the subject of negotiation. In *Foley*, the defendant sold an undercover officer an ounce of cocaine on three separate occasions. During the last transaction, the officer asked if he could get two ounces the next time and a cheaper price per ounce, and the defendant stated that the price would be the same. Based on this conversation, the district court included the additional two ounces in calculating the BOL, reasoning that the defendant had "negotiated" the sale of this amount. Holding that the district court's finding was clearly erroneous, the Eighth Circuit reasoned:

> We recognize that the amount suggested by the agent was likely within the capacity that Foley could obtain for sale and that the agent need not actually intend to ever buy the amount suggested. Thus, had the two *agreed* to another sale of cocaine, any amount under negotiation for such a sale could be used in calculating the BOL. But these facts show us nothing approaching an agreement or negotiation. The only statement from Foley is that two ounces would go for the same price as two one-ounce buys. The agent might just have easily asked what the price of a kilogram would be in an effort to have such amount later be factored into the BOL.

*Id.* at 1265. *See also Ruiz*, 932 F.2d at 1184 (defendant's statement during two-kilogram transaction with undercover officer that he could get ten kilograms if the officer wanted was insufficient to establish that defendant negotiated sale of ten kilograms); *United States v. Moon*, 926 F.2d 204, 209 (2d Cir.1991) (initial conversation concerning "one or two" kilograms was insufficient to find negotiation for two kilograms where eventual agreement was for only one kilogram). Like *Foley*, we see nothing approaching an agreement or nego-

tiation for the sale of an additional pound of cocaine in the facts of this case. Accordingly, we hold that the district court's finding that Defendant negotiated with Agent Irwin for the sale of an additional pound of cocaine was clearly erroneous.

Defendant's sentence is REVERSED and the case is REMANDED to the district court for resentencing consistent with this opinion.