989 F.2d 508
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Roshawn Sabrina MCFARLAND, also known as Roshawn Sabrina
Wright, Defendant-Appellant.
 No. 92-6144.
 United States Court of Appeals, Tenth Circuit.
 March 9, 1993.
 
 Before STEPHEN H. ANDERSON and BRORBY, Circuit Judges, and BRATTON, District Judge.
 ORDER AND JUDGMENT*
 STEPHEN H. ANDERSON, Circuit Judge.
 
 
 1
 Roshawn Sabrina McFarland appeals the sentence imposed upon her under the United States Sentencing Guidelines ("Guidelines") following her plea of guilty to distributing 27.2 grams of cocaine base (crack cocaine), in violation of 21 U.S.C. § 841(a)(1). The base offense level and resulting Guideline range used in sentencing Ms. McFarland took into account both the 27.2 grams of cocaine base in the charged offense and an additional 82.0 grams of cocaine base involved in two uncharged episodes. The district court concluded that the latter constituted relevant offense conduct, U.S.S.G. § 1B1.3, and was includable in the base offense level determination under U.S.S.G. § 2D1.1. Ms. McFarland contends that inclusion of the additional 82.0 grams was erroneous and constitutes a misapplication of the Guidelines. Specifically, she argues that the evidence was insufficient and, in the alternative, that the district court committed error by failing to make findings that each of the uncharged episodes was part of the same course of conduct, scheme or plan as that for which she pled guilty. Brief of Defendant-Appellant at 13. We find no merit in these contentions and affirm.
 
 
 2
 The charged offense and the two disputed relevant conduct episodes occurred during a three-day period, September 3-5, 1991.[1] As to the charged offense, Ms. McFarland admitted that on September 3, 1991, she sold 27.2 grams of cocaine base (referred to in the sale as one "zone," equivalent to one ounce) to a confidential informant for $1,100. See Transcript of Sentencing Hearing ("Tr.") at 5, 25-26. The first relevant conduct episode relates to Ms. McFarland's agreement to sell an additional 56.7 grams of cocaine base to the same informant. As to that matter, Ms. McFarland admits that in conversations with the informant on September 3 and again on September 4, 1991, she agreed to sell the informant an additional two ounces[2] of cocaine base at $1,100 per ounce. Tr. at 26, 29-30. The sale, however, did not occur.
 
 
 3
 The second relevant conduct episode occurred on September 5, 1991. On that date an undercover agent purchased 25.3 grams of cocaine base from an individual named Fred Rice. Tr. at 13. Testimony at the sentencing hearing indicated that Ms. McFarland was Mr. Rice's source for the drug. Tr. at 15.
 
 
 4
 In his supplemental presentence report, the United States probation officer aggregated the weight of the drugs related to the two relevant conduct episodes described above with the weight of the cocaine base in the charged offense to which Ms. McFarland pled guilty. That is, the probation officer added the 56.7 grams and 25.3 grams included in the two relevant conduct episodes to the 27.2 grams, for a total of 109.2 grams. Under U.S.S.G. § 2D1.1(c)(6), Drug Quantity Table, a base offense level ("BOL") of 32 is assigned to quantities of cocaine base weighing 50 to 149 grams. Accordingly, the probation officer calculated Ms. McFarland's base offense level at 32, then recommended a two-level downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), resulting in a base offense level of 30. Ms. McFarland filed objections, denying responsibility for any drug quantity other than the 27.2 grams which she pled guilty to distributing, and asserting that her base offense level should have been calculated on that amount (i.e., a BOL of 26, derived from § 2D1.1(c)(8), minus the two-level downward adjustment for acceptance of responsibility). Tr. at 5; Brief of Defendant-Appellant at 13.
 
 
 5
 The district court held an evidentiary hearing on Ms. McFarland's objections. Ms. McFarland testified and denied any distribution of cocaine base to Fred Rice on September 5, 1991. She also stated that although she agreed on September 3 and 4, 1991, to sell two additional ounces of cocaine base to the confidential informant, it was merely "idle talk," and she had no ability to make such a sale since she "never had no more [cocaine base] than" the one ounce she sold to the informant on September 3. Tr. at 29.
 
 
 6
 Drug Enforcement Administration Special Agent Michael Bakios testified for the government and described the surveillance, telephone monitoring, pager records, and other evidence showing Ms. McFarland's involvement in the two contested episodes. He also related information given by the confidential informant and by Fred Rice.
 
 
 7
 After hearing the testimony and considering the evidence of record, the district court made findings, set forth below, including by reference evidence detailed by the Assistant United States Attorney. See Tr. at 38-41 (argument of Assistant United State Attorney reviewing evidence supporting the probation officer's sentence computation). Among those findings, the district court specifically found that Ms. McFarland's testimony in all relevant respects was not credible and that the testimony of Agent Bakios was credible. The court stated:
 
 
 8
 THE COURT: With regard to both of the matters in dispute here, the two different transactions that are in dispute, it is first of all not necessary as all counsel are aware that I have live witnesses. Hearsay is acceptable in a sentencing hearing. It is true as you argue, Mr. Watson, that the evidence must be reliable but in this case the government has corroboration for both the transactions outside of the testimony of the agent. Those items of corroboration were listed by Ms. Kaestner in her argument and I won't go through them again but I believe that the testimony of the agent and the stories that he is relating from other witnesses are credible, are corroborated, and the defendant's version of events is not credible, neither her explanation of why she agreed to do something that she didn't do the next day nor the events regarding Fred Rice are credible.
 
 
 9
 Relevant offense conduct covers a lot of ground. Whether you agree with the system set up by the guidelines or not, the system is that relevant offense conduct is taken into account. The government must prove that conduct by a preponderance of the evidence and it's my finding that that conduct as explained in the presentence report has been proved to that standard and will be taken into consideration by me.
 
 
 10
 The result then is that the defendant is going to be accountable for 109.2 grams of cocaine--of cocaine base, I'm sorry--resulting in a base offense level of 32 and with the two level reduction for acceptance of responsibility, the total offense level of 30, the criminal history category is 1, resulting in a guideline range of 97 to 121 months. Those are my conclusions. There is no factor which would warrant departure and the sentence will be within that guideline range.
 
 
 11
 Tr. at 45-46. Thereafter, the court stated its reasons for selecting a particular sentence and imposed a sentence of 110 months of incarceration followed by five years of supervised release. Id. at 49-50.
 
 
 12
 Ms. McFarland does not dispute that under the Guidelines, "[t]ypes and quantities of drugs not specified in the count of conviction may be considered in determining the offense level," U.S.S.G. § 2D1.1, comment. (n. 12), or that "in a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." U.S.S.G. § 1B1.3, comment. (backg'd).[3] See United States v. Hershberger, 956 F.2d 954, 957 (10th Cir.1992); United States v. Ross, 920 F.2d 1530, 1538 (10th Cir.1990); see generally United States v. Shewmaker, 936 F.2d 1124, 1129 (10th Cir.1991) ("In applying the 'common scheme or plan' language, courts have looked to factual commonality. Factors such as temporal and geographical proximity as well as common victims and a common criminal investigation are dispositive."), cert. denied, 112 S.Ct. 884 (1992). Rather, Ms. McFarland attacks the sufficiency of the evidence and also alleges that the district court failed to make required findings.
 
 
 13
 With respect to the sufficiency of the evidence argument, "[t]he government must prove the quantity of drugs by a preponderance of the evidence." United States v. Bernaugh, 969 F.2d 858, 864 (10th Cir.1992). We review the district court's determination of the appropriate drug quantity for sentencing under a clearly erroneous standard, and we "will not disturb [that determination] unless it has no support in the record or, after reviewing all the evidence, we are firmly convinced that an error has been made." Id.; United States v. Laster, 958 F.2d 315, 318 (10th Cir.), cert. denied, 113 S.Ct. 147 (1992). The ultimate conclusion with respect to the correct application of the Guidelines is one we review de novo. See United States v. Maltais, 961 F.2d 1485, 1486 (10th Cir.1992). Our review must also take into account at every stage that the district court made credibility findings in which the court determined that Ms. McFarland's testimony on her own behalf was not credible and that the testimony given by Agent Bakios was credible. Since the centerpiece of Ms. McFarland's arguments with respect to the evidence is her own testimony, which may not be credited, our review of the district court's findings need not be extensive.
 
 
 14
 Thus, we reject Ms. McFarland's contention that she was not serious about selling an additional two ounces of cocaine base to the confidential informant. The fact-intensive inquiry of whether Ms. McFarland and the confidential informant negotiated this drug sale can encompass a variety of aspects. See, e.g., United States v. Reyes, 979 F.2d 1406, 1410 (10th Cir.1992) (negotiation must include "specific details"); United States v. Ruiz, 932 F.2d 1174, 1184 (7th Cir.) (price, quantity, and location given as examples of salient details of drug negotiations), cert. denied, 112 S.Ct. 151 (1991); Reyes, 979 F.2d at 1410 ("[A]t a minimum [evidentiary establishment of a negotiation] requires proof that Defendant intended to participate in an additional illegal drug transaction. [Such] intent may be inferred from the circumstances."). The evidence, including monitored telephone conversations, pager records, the actual sale to the confidential informant, the location, and the testimony, abundantly supports the findings of the district court.
 
 
 15
 We also reject Ms. McFarland's contention that she could not consummate such a sale because she did not have and could not get two more ounces of cocaine base, relying on Ruiz, 932 F.2d at 1184. See U.S.S.G. § 2D1.4, comment. (n. 1). Here, Ms. McFarland was negotiating a specific and common quantity for the sale, two "zones," rather than some unrealistic or indefinable amount. In addition, Ms. McFarland admittedly sold one ounce of crack cocaine on Tuesday, September 3, for which she pled guilty; and the court found that she distributed one ounce of crack cocaine to Fred Rice on Thursday, September 5, amounts similar in quantity to this two-ounce negotiation. Other relevant evidence showed that the three incidents occurred on three consecutive days, in the same neighborhood, using the same house and telephones, and were all brought to the government's attention during the same investigation of the Reed drug distribution network. Again, this evidence is more than sufficient to support the findings of the district court, which do not even approach the level of error, much less clear error.
 
 
 16
 With respect to the transaction involving Fred Rice on September 5, 1991, Ms. McFarland first relies upon her own denial, which we disregard because of the credibility determination by the district court. She also argues that there is no evidence in the probable cause affidavit, or in any other report, that she furnished narcotics to Fred Rice, Brief of Defendant-Appellant at 8; that the only testimony that Fred Rice received cocaine from her was hearsay testimony, id.; and that Mr. Rice was available to testify but was never called by the government, id. at 11. Such arguments are wholly unpersuasive.
 
 
 17
 Hearsay evidence may be relied on at a sentencing hearing if it is sufficiently reliable. See U.S.S.G. § 6A1.3(a) ("In resolving any reasonable dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy."); 18 U.S.C. § 3661. Thus, it was not necessary for the government to call Mr. Rice to testify in person, since Agent Bakios was able to relate the necessary facts.
 
 
 18
 The lack of information in the probable cause affidavit connecting Ms. McFarland to the Fred Rice transaction casts no doubt on the findings of the district court. As with the 56.7 gram episode, there is abundant evidence in the record connecting Ms. McFarland to the sale of 25.3 grams of cocaine base by Fred Rice on September 5. Agent Bakios related that, as part of the investigation of the Leson Reed drug distribution organization, both an undercover agent and a confidential informant, under surveillance by other agents, contacted Mr. Rice, that Mr. Rice agreed to sell them an ounce of crack cocaine, that Mr. Rice told them that he had to get the drugs from a "female," and that at Mr. Rice's request they followed him in his car to the house at 1024 N.E. 27th St., where Ms. McFarland had negotiated the previous one-ounce sale on September 3. They observed Ms. McFarland's car parked outside the house. Agent Bakios testified that Mr. Rice went in the house, emerged and waved for them to drive down the street, went back in, reemerged and got into his car, and then drove to a parking lot where the sale was consummated. He testified further that after Mr. Rice's arrest, Mr. Rice told Agent Bakios that he had gotten the crack cocaine from Ms. McFarland in the house. Tr. at 15. Agent Bakios's testimony was corroborated by the telephone records from Mr. Rice's mobile telephone, Ms. McFarland's pager, and the telephone at 1024 N.E. 27th St., id. at 36-37, the accuracy of which was stipulated by Ms. McFarland's counsel, id. at 37. We conclude, therefore that the district court did not err in its findings with respect to the involvement of Ms. McFarland in the two drug episodes in question.
 
 
 19
 Ms. McFarland's final argument is that "the Court incorrectly applied the guideline when it made no factual finding that the 82.0 grams of Cocaine base transactions as alleged to have occurred on September 3, 1991, and the 27.2 grams, which is the subject of the indictment, were part of the 'same course of conduct or common scheme or plan' as set out in the indictment." Brief of Defendant-Appellant at 13 (emphasis in original) [quoting U.S.S.G. § 1B1.3(a)(2) ].[4] To the contrary, the district court's findings are clear and unmistakable. They include reference to relevant offense conduct (U.S.S.G. § 1B1.3), and tie Ms. McFarland in a short space of time, in the same location, to the same kind of drug activity and drug, the same telephones, pager, and method of dealing. The district court's findings were more than sufficient to support the inclusion of the drugs and drug quantities of the two episodes in question.
 
 
 20
 For the reasons stated, we conclude that there was no error in the sentencing proceedings in the district court, and the sentence imposed is AFFIRMED.
 
 
 21
 FNThe Honorable Howard C. Bratton, Senior Judge, United States District Court for the District of New Mexico, sitting by designation.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 In the summer of 1991, the federal Drug Enforcement Administration ("DEA") began investigating a drug distribution operation in Tulsa, Oklahoma, headed by Leson Reed. All of Ms. McFarland's conduct associated with her sentencing was ascertained during this investigation
 
 
 [2]
 There is no dispute over the government's estimate that two ounces would weigh 56.7 grams, based on the actual weight of the ounce Ms. McFarland sold to the informant earlier on September 3
 
 
 [3]
 The Guideline provisions applicable to this case, and referred to herein, are from the United States Sentencing Commission Guidelines Manual (Nov. 1991). See United States v. Mondaine, 956 F.2d 939, 941 (10th Cir.1992) (sentencing is under the version of the guidelines in effect on the date of sentencing)
 
 
 [4]
 The only authority cited by Ms. McFarland as establishing the requirement for findings which she contends the district court omitted is a series of cases from the Seventh Circuit. Brief of Defendant-Appellant at 17. Most of those cases, in turn, cite no authority other than what might, perhaps, be considered some sort of supervisory rule in that circuit. Two of the cases cite to the general statutory requirement of 18 U.S.C. § 3553(c)(1) ("[T]he court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence and, if the sentence ... [is within the Guideline range], and that range exceeds 24 months, the reason for imposing a sentence at a particular point within the range...."). See United States v. Edwards, 945 F.2d 1387, 1399 (7th Cir.1991), cert. denied, 112 S.Ct. 1590 (1992); United States v. White, 888 F.2d 490, 495 (7th Cir.1989). One refers to the requirement for findings with regard to disputes arising from presentence reports, Fed.R.Crim.P. 32(c)(3)(D). See United States v. Jewel, 947 F.2d 224, 234 (7th Cir.1991); see also U.S.S.G. § 6A1.3. However, none of these provisions were violated in any way which would support Ms. McFarland's contention; the district court made adequate findings on the record. In addition, there is no local rule in this circuit specifying a requirement for findings more detailed or specific that those required by 18 U.S.C. § 3553(c), Rule 32(c)(3)(D), and U.S.S.G. § 6A1.3