UNITED STATES of America, Plaintiff–Appellee,

v.

Benjamin SALCIDO, Defendant–Appellant.

No. 93–3072.

United States Court of Appeals, Tenth Circuit.

Aug. 30, 1994.

Michael L. Harris, Asst. Federal Public Defender (Charles D. Anderson, Federal Public Defender with him on the brief), Kansas City, KS, for defendant-appellant.

Leon J. Patton, Asst. U.S. Atty. (Randall K. Rathbun, U.S. Atty. with him on the brief), Kansas City, KS, for plaintiff-appellee.

Before KELLY and McWILLIAMS, Circuit Judges, and GODBOLD, Senior Circuit Judge.[1]

GODBOLD, Senior Circuit Judge:

This is an appeal from a jury conviction of conspiracy to launder money in violation of 18 U.S.C. § 1956(a)(1)(B)(i). This is a companion case to that of Kevin Dimeck, a co-defendant tried with Salcido. The facts are set out in the *Dimeck* opinion and need not be repeated at length. *U.S. v. Dimeck*, 24 F.3d 1239 (10th Cir.1994).

Arnold Pruneda, a known drug dealer, was shipping marijuana into the Detroit area for distribution. He arranged for Richard Moore, a government informant, to go from Kansas to Detroit to pick up a package containing $60,000 in proceeds from marijuana transactions and to deliver the money to Pruneda in California. Pruneda wanted Moore to drive to California rather than fly because of risk of detection at an airport. Moore flew to Detroit, Dimeck delivered the money to him in Detroit and then dropped out of the picture. Moore turned the money over to the Drug Enforcement Administration. Pruneda instructed Moore concerning means to retrieve the funds from DEA, and Moore pretended that the funds had been retrieved. Moore asked that the plans to deliver the money be changed and that Pruneda come to Kansas City, where Moore lived, and receive the funds from Moore. Moore represented that the [feigned] return of the funds to him by DEA would be in the form of a check.

Rather than go to Kansas City himself Pruneda recruited Salcido, his brother-in-law, to receive the funds in Kansas City. Salcido and Moore discussed the form of the funds. Salcido asked that when the DEA check was cashed Moore obtain large bills. Salcido and Moore discussed when the check would be cashed, and Moore said that he would not cash it until immediately before Salcido arrived in Kansas City. Salcido and Moore discussed the timing of the Kansas City meet, and Salcido agreed to give Moore several days' notice.

Salcido went to Kansas City and met with Moore. They discussed payment of Moore for his services. By long-distance telephone, Salcido received permission from Pruneda to pay Moore $2,000 out of the funds. Salcido confirmed that the money would be in large bills. Salcido made a plane reservation to go to California the next day. Moore delivered to Salcido a bank bag supposedly containing the money but actually containing scrap paper, and Salcido was arrested.

In *Dimeck* this court concluded that there was an initial conspiracy between Pruneda and Dimeck pursuant to which Dimeck was to deliver drug money to Moore, who in turn was to transport the money to Pruneda in California. This court held that Dimeck's participation in that initial conspiracy ended when he turned the money over to Moore and that a second conspiracy, in which Dimeck did not participate, ensued after Moore delivered the money to DEA. The court concluded that the evidence did not support Dimeck's conviction of conspiracy to launder money.

Pruneda set about to retrieve the money from DEA and to arrange and implement transportation of the money, when retrieved, to himself in California. Dimeck was not a participant but Salcido became a participant in what developed into the second conspiracy. Pruneda was the guiding force in the second conspiracy and Salcido was responsible for the acts of Pruneda in furtherance of that conspiracy. *Pinkerton v. U.S.*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946).

The series of events embracing the second conspiracy go substantially beyond mere transportation, or possession to transport, funds. Pruneda changed the movement of the retrieved funds from a Detroit-to-California route to a Detroit-to-Kansas City-to-California route. He changed the place of deliv-

---

1. The Honorable John C. Godbold, Senior U.S. Circuit Judge for the Eleventh Circuit, sitting by designation.

ery by Moore from California to Kansas City. He recruited Salcido to make the pickup in Kansas City. Salcido discussed changing the [feigned] funds from check to currency. He requested that the conversion be in large bills that could be easily concealed. He participated in payment of Moore for his services and received permission from Pruneda to pay Moore out of the [purported] funds. He made the arrangements to go from Kansas City to California by airplane rather than auto.

Mere possession and transportation of illegal proceeds does not constitute money laundering under § 1956(a)(1)(B)(i). There must be evidence that the defendant's possession or transportation of drug money was "designed to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity." *U.S. v. Gonzalez–Rodriguez*, 966 F.2d 918, 925 (5th Cir.1992). As this circuit held in *U.S. v. Garcia–Emanuel*, 14 F.3d 1469, 1474 (10th Cir.1994), the statute is "aimed at transactions that are engaged in for the purpose of concealing assets." The proposal to convert the purported funds into large bills that could more easily be transported permitted the jury to infer that Salcido knew the "character" of the money he was to transport and in connection therewith was attempting to conceal the character of the money. His participation in arranging with Pruneda the payment of Moore out of the purported funds were actions beyond mere transportation of funds. Moreover under *Pinkerton*, once Salcido joined with Pruneda in the second conspiracy he became responsible for Pruneda's actions in furtherance of that conspiracy, which involved planning, supervision and direction of events that the jury could infer were done for the purpose of concealing the existence, character, ownership and control of the funds. These events were sufficient to support the jury's verdict

finding Salcido guilty of a conspiracy that violated the statute.

AFFIRMED.

PAUL KELLY, Jr., Circuit Judge, dissenting.

The focus of this appeal centers on whether Mr. Salcido's acceptance of what he believed to be proceeds of unlawful activity with the intent to transport them across state lines constitutes conducting or attempting to conduct a "financial transaction" with the intent to conceal or disguise the nature of such funds in violation of § 1956(a)(3)(B). The statute defines "financial transaction" as "a transaction which in any way or degree affects interstate of foreign commerce (i) involving the movement of funds by wire or other means or (ii) involving one or more monetary instruments...." 18 U.S.C. § 1956(c)(4)(A). A "transaction" "includes a purchase, sale, loan, pledge, gift, transfer, delivery, or other disposition...." 18 U.S.C. § 1956(c)(3).

Both the Fifth and Sixth Circuits have recently held that the mere transportation of cash concealed either in a car or on one's person from one point to another, even with the knowledge that the cash represents proceeds of specified unlawful activity, does not constitute a "financial transaction" for purposes of 18 U.S.C. § 1956(a)(1)(B)(i).[1] *See United States v. Puig–Infante*, 1994 WL 126773 at *6–7 (5th Cir.1994); *United States v. Samour*, 9 F.3d 531, 536 (6th Cir.1993). *But see United States v. Dimeck*, 24 F.3d 1239, 1246 (10th Cir.1994). Even if we expand the meaning of "financial transaction" to include mere concealed transportation, *Dimeck*, 24 F.3d at 1246, the government's case fails for another reason. On this record, there is a complete lack of evidence that Mr. Salcido did anything or had the intent to do anything to "conceal or disguise the nature" of the illegal proceeds. "[B]y the express terms of the statute, a design to conceal or disguise the *source* or *nature* of the proceeds

---

1. The difference between § 1956(a)(1)(B)(i) and § 1956(a)(3)(B) is that the former covers offenses that involve the actual proceeds of unlawful conduct and the latter is designed to criminalize authorized sting operations involving property believed by the defendant to be the proceeds of

specified unlawful activity. Because this distinction makes no difference in the context of our analysis, interpretations of § 1956(a)(1)(B)(i) apply equally to our interpretation of § 1956(a)(3)(B).

is a necessary element for a money laundering conviction." *Sanders,* 928 F.2d at 946 (emphasis added); *see also Dimeck,* 24 F.3d at 1246 ("[T]he government [must prove] that the transaction was designed to conceal the *attributes* of the illegal proceeds."); *United States v. Gilliam,* 975 F.2d 1050, 1056 (4th Cir.1992) ("[T]he Government must prove a specific intent to structure a transaction so as to conceal the true nature of the proceeds."); *United States v. Jackson,* 935 F.2d 832, 838 (7th Cir.1991) ("[T]he government must prove that the transaction was designed to conceal one or another of the enumerated attributes of the proceeds involved."). The requisite intent to "conceal or disguise the nature" of illegal proceeds can be gleaned only from acts designed to conceal *what kind* of money is involved—i.e., drug money—in a financial transaction, not merely *the fact that* money is involved. Therefore, mere physical concealment and transport is not what was contemplated as an offense under either § 1956(a)(1)(B)(i) or § 1956(a)(3)(B). The court's decision fails to account for this legal distinction and merely distinguishes the recent *Dimeck* decision on factual grounds.

A review of the record reveals no evidence of any intent to conceal the nature of the funds or the identity of the participants to the transaction. Mr. Salcido requested the funds be in the form of large bills to facilitate their concealment on his person while a passenger on a commercial flight from Missouri to California. These facts are not disputed; the dispute lies in their import. Mr. Salcido's request for large bills provides evidence only of his intention to conceal the fact that he was carrying money. There is simply no evidence that he attempted or intended to conceal the character of the money. Therefore, the government failed to prove that Mr. Salcido violated § 1956(a)(3)(B).

Mr. Salcido was also convicted of conspiracy with Arnold Pruneda and Kevin Dimeck "to conduct and attempt to conduct a financial transaction affecting interstate commerce which involved the proceeds of marijuana distribution, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and further knowing that the transaction was designed to conceal and disguise the nature, location, source, and ownership of the proceeds of the specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i) [and in violation of 18 U.S.C. § 371]."

Superceding Indictment, I.R. doc. 6 at 6. In order to prove a § 1956(a)(1)(B)(i) conspiracy the government was required to show 1) an agreement between at least two conspirators to conduct a financial transaction; 2) knowledge that the transaction involved proceeds from a specified unlawful activity; 3) the transaction in fact involved the proceeds of a specified unlawful transaction; and 4) the conspirators designed the transaction with the intent to conceal or disguise the nature, location, source, ownership or control of such ill-gotten proceeds. *See* 18 U.S.C. §§ 371, 1956(a)(1)(B)(i).

Even assuming that Mr. Salcido conspired to conduct a transaction that *in fact* involved the proceeds of specified unlawful activity, the government has failed to prove a conspiracy to violate § 1956(a)(1)(B)(i). As explained above, money laundering in violation of § 1956(a)(1)(B)(i) involves the concealment of the character or other enumerated attribute of ill-gotten gain. A conspiracy to violate § 1956(a)(1)(B)(i), therefore, must involve an agreement to conduct a financial transaction designed to effect such concealment. Here, the government's proof fell short—the record indicates only that the members of this scheme intended to conceal *the fact that* certain persons were in possession of unlawfully obtained funds in an effort to transport them. Like *Dimeck,* the record in this case reflects Mr. Salcido had no involvement in the fabricated retrieval of the money from the DEA and the alleged concealment attendant thereto; only Mr. Pruneda and the Mr. Moore were privy to that transaction. Invoking *Pinkerton,* the court attempts to tie Mr. Salcido into Mr. Pruneda's involvement in the feigned procurement of a check from the DEA under false pretenses. Mr. Pruneda committed no criminal act, other than conspiring with Mr. Moore, for which Mr. Salcido could be liable. The court fails to recognize that it was legally impossible for Mr.

Pruneda to conspire with a government agent. *See United States v. Reyes,* 979 F.2d 1406, 1408 n. 4 (10th Cir.1992); *United States v. Barboa,* 777 F.2d 1420, 1422 (10th Cir.1985). Because no one other than Mr. Moore was involved in the scheme to recover the funds from the DEA, Mr. Pruneda had no coconspirator in this regard. Thus, what the court labels as the second conspiracy could not have included the feigned recovery of the money from the DEA.

Because the government failed to adduce evidence that any member of this second conspiracy acted or attempted to act to conceal *the nature or source of the funds,* the government failed to prove a conspiracy to violate § 1956(a)(1)(B)(i). Accordingly, I respectfully dissent.