9 F.3d 118
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES Of America, Plaintiff-Appellee,
v.
Anthony Ross BENSON, Defendant-Appellant.
 No. 92-5224.
 United States Court of Appeals, Tenth Circuit.
 Oct. 22, 1993.
 
 Before SEYMOUR and EBEL, Circuit Judges, and McWILLIAMS, Senior Circuit Judge.
 
 ORDER AND JUDGMENT[1]
 
 1
 In a one-count indictment Anthony Ross Benson was charged with carrying a firearm, namely a Glock, .40 Cal. semi-automatic pistol, during and in relation to a drug trafficking crime, namely possessing with an intent to distribute cocaine, a Schedule II controlled substance, in violation of 18 U.S.C. 924(c). Prior to trial, Benson filed a motion to suppress the use at trial of the firearm and cocaine taken by the police in a search of Benson's automobile. After an evidentiary hearing, the motion was denied. Later, a jury returned a verdict of guilty as charged, and Benson was sentenced to imprisonment for five years to be followed by three years of supervised release.
 
 
 2
 Benson appeals his conviction and the sentence imposed thereon and, on appeal, advances two grounds for reversal: (1) the search of his automobile violated his Fourth Amendment rights and, accordingly, the district court erred in denying the motion to suppress; and (2) the district court erred in denying his motion for acquittal made at the conclusion of the government's presentation of evidence and renewed after the defense rested without presenting any evidence. Fed.R.Crim.P. 29(a). Neither of these matters has merit and we therefore affirm.
 
 
 3
 The Tulsa, Oklahoma police received a tip from what they believed to be a reliable informant that Benson was going to make a cocaine delivery at the Osage Hills Apartment complex in Tulsa at around 8:30 p.m. on June 9, 1992, that Benson would be driving a Chevrolet Monte Carlo and that the cocaine and a gun might well be found underneath the hood of his vehicle. The Osage Hills Apartment complex was known to the Tulsa police as a drug-trafficking area. At about 8:30 p.m. on June 9, 1992, Officer Leach saw Benson, who was known to Leach, parked in a Chevrolet Monte Carlo in the parking lot of the Osage Hills Apartment complex. When Benson pulled out of the lot, Leach followed.
 
 
 4
 At the suppression hearing, Leach testified that he had previously that day made a record check and had determined that there were several outstanding warrants for Benson's arrest. While following Benson, Leach determined that Benson was exceeding the 25 mile-per-hour speed limit by some 10 miles. At this point, Leach turned on his overhead light and "pulled" the Benson-driven vehicle to the curb. Benson did not have a valid driver's license. Based on the outstanding warrants, the fact that Benson had been speeding and then had no driver's license, Leach placed Benson under arrest and "physically handcuffed him."
 
 
 5
 A juvenile passenger with Benson resisted the officer, and during the course of effecting his arrest a bag of crack cocaine fell out of his clothing. A box of ammunition was also observed on the front seat between Benson and his passenger.
 
 
 6
 Officer Leach testified that he intended to have the Benson vehicle towed to police headquarters and before doing so, he instructed other officers who had arrived at the scene to inventory the vehicle, which was in accord with police practice. In their search of the vehicle, the officers found, and seized, the cocaine and firearm which formed the basis for the present prosecution under the hood of the car.
 
 
 7
 In denying the motion to suppress, the district court held, in essence, that the Tulsa police had probable cause to do what they did. We agree. There is no real suggestion that Officer Leach did not have probable cause to stop Benson. At the minimum, Officer Leach knew there were outstanding warrants for Benson's arrest, and he had personally observed that Benson had violated the speed laws of Tulsa. The real question is whether, after stopping the vehicle, the Tulsa police had probable cause to search the vehicle, including an inspection under the hood. We agree with the district court that they did.
 
 
 8
 The Tulsa police had received a tip from an informant who had been used before by the Tulsa Police Department, with success, that Benson would be at the Osage Hills Apartment complex for a drug delivery at about 8:30 p.m. on June 9, 1992, and would be driving a Chevrolet Monte Carlo, and that he might well have the drugs, and possibly a firearm, under the hood of his car. Benson did appear at the Osage Hills Apartment complex at 8:30 p.m. on June 9, 1992, driving a Chevrolet Monte Carlo. Benson was "pulled" over and arrested a short distance after he left the apartment's parking area. His passenger-companion dropped some cocaine as he was being placed under arrest. A box of ammunition was observed on the front seat. Officer Leach instructed a fellow officer to inventory the contents of the car and to check under the hood, and that check disclosed the cocaine and firearm.
 
 
 9
 In our view, considering the "totality of the circumstances," there is substantial basis for the district court's determination that Officer Leach, acting under exigent circumstances, had probable cause to believe that contraband would be found in a particular place thereby justifying the warrantless search of Benson's automobile, which, of course, included the space under the hood. United States v. Corral, 970 F.2d 719, 727 (10th Cir.1992); United States v. Smith, 797 F.2d 836, 840 (10th Cir.1986).[2]
 
 
 10
 As indicated, Benson moved for a judgment of acquittal at the conclusion of the government's case, and again after he rested his case without calling any witness. These motions were denied, and, on appeal, counsel argues that the motions should have been granted since the government's evidence failed to show that the firearm found under the hood of the vehicle was being "use[d]" or "carrie[d]," by Benson, "during and in relation to any ... drug trafficking crime." 18 U.S.C. 924(c)(1).
 
 
 11
 The gist of Benson's argument apparently is that since the firearm was not in his hands, or in close proximity thereto, it could not have been "used" or "carried" by him during and in relation to a drug trafficking crime. This argument is at odds with such cases as United States v. Ross, 920 F.2d 1530, 1536 (10th Cir.1990) and United States v. McKinnell, 888 F.2d 669, 674-75 (10th Cir.1989), where we held that to use or carry a firearm one need not be "firing, brandishing or displaying it," and it is sufficient to show "ready access" and that the firearm "was an integral part of his criminal undertaking and its availability increased the likelihood that the criminal undertaking would succeed." The present case meets that test. We note that in Ross, 920 F.2d 1530, the firearm was in a locked trunk of the car.
 
 
 12
 Judgment affirmed.
 
 
 
 [1]
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir. R. 36.3
 
 
 [2]
 For a discussion of the so-called "automobile exception" from the warrant requirement, see Carroll v. United States, 267 U.S. 132 (1925). See also United States v. Ross, 456 U.S. 798 (1982); United States v. Chatman, 994 F.2d 1510, 1514 (10th Cir.1993), cert. denied, 1993 U.S. Lexis 5948 (U.S. Oct 4, 1993); United States v. Barbee, 968 F.2d 1026, 1030 (10th Cir.1992)